XAVIER BECERRA
Attorney General of California
SUSAN S. FIERING
Supervising Deputy Attorney General
JAMIE JEFFERSON (SBN: 197142)
SOMERSET PERRY (SBN: 293316)
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA  94612-0550
  Telephone: (510) 879-0852
  Fax: (510) 622-2270
  E-mail:  Jamie.Jefferson@doj.ca.gov
*Attorneys for the People of the State of California, ex
rel. Attorney General Xavier Becerra*

*[Additional counsel for plaintiffs listed on signature
page]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA, BY AND THROUGH ATTORNEY GENERAL XAVIER BECERRA, STATE OF NEW YORK, STATE OF CONNECTICUT, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, STATE OF VERMONT, STATE OF WASHINGTON, and CITY OF NEW YORK,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**JAMES R. PERRY, AS SECRETARY OF UNITED STATES DEPARTMENT OF ENERGY, and THE UNITED STATES DEPARTMENT OF ENERGY,**<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Administrative Procedure Act, 5 U.S.C. § 551 et seq.; Federal Register Act, 44 U.S.C. § 1503 et seq.; Energy Policy and Conservation Act, 42 U.S.C. § 6291 et seq.) |

### INTRODUCTION

1.    The People of the State of California, the States of New York, Washington, Maine, Connecticut, Illinois, Vermont, Oregon, Maryland, the Commonwealths of Massachusetts and Pennsylvania, and the City of New York (hereinafter "Plaintiffs"), representing over 114 million people in the United States, challenge the failure of the United States Department of Energy ("DOE") to publish finalized energy-efficiency standards ("New Standards") as final rules in the Federal Register for five categories of appliances and industrial equipment –  portable air conditioners, uninterruptible power supplies, air compressors, walk-in coolers and freezers, and commercial packaged boilers – in violation of its non-discretionary duty under the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6291 et seq., its implementing regulations, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., and the Federal Register Act ("FRA"), 44 U.S.C. §§ 1503 et seq.

2.    EPCA prescribes energy efficiency standards for a variety of consumer, commercial and industrial equipment. The statute establishes initial minimum energy efficiency standards for many products, and directs DOE to meet specific timetables for periodic review and revision of those standards to ensure that they are set at the maximum efficiency level that is technologically feasible and economically justified.

3.    Energy efficiency standards are highly technical and complex.  To avoid errors in those standards, DOE has established an error correction process to alert the agency to "typographical," "calculation," or "numbering" errors – before a rule is published in the Federal Register, triggering EPCA's anti-backsliding provisions.  10 C.F.R. § 430.5 ("Error Correction Rule").  DOE is relying on the Error Correction Rule to avoid publishing the New Standards in the Federal Register, preventing them from taking effect.

4.    After years of substantive review and analysis by DOE and interested stakeholders, in December 2016, DOE's Acting Assistant Secretary for Energy Efficiency signed and dated the New Standards[1] as final rules and posted them for pre-publication error correction review in

---

[1] Energy Conservation Standards for Portable Air Conditioners, Docket No. EERE-2013-BT-STD-0033 (posted Dec. 28, 2016); Energy Conservation Standards for Uninterruptible Power
(continued…)

accordance with 10 C.F.R § 430.5.  Even though the 45-day period for submission of correction requests under the Error Correction Rule closed, and the 30-day period for DOE's submission of the rules for publication to the Office of Federal Register ("OFR") passed, DOE has not submitted the New Standards to the OFR for publication.  DOE's failure to do so is a violation of EPCA, the APA, and the FRA.

5.     For three of the product categories (portable air conditioners, uninterruptible power supplies, and air compressors), DOE currently has no federal energy efficiency standard in effect. In the case of walk-in coolers and freezers, EPCA requires DOE to have amended the existing standard by 2012. For uninterruptible power supplies, EPCA requires DOE to have enacted a new standard by 2011. These standards are overdue, making the indefinite further delay of the New Standards all the more egregious.

6.     DOE's failure to perform its non-discretionary duty to publish the New Standards directly harms Plaintiffs' interests by adversely impacting the environment, consumers, economies, public health, natural resources, energy efficiency strategies, and climate change reduction goals of each Plaintiff.  It is estimated that the New Standards for these five categories of products could conserve an additional 5.8 quads[2] of energy by 2035, reducing carbon dioxide emissions by over 26 million metric tons per year, the equivalent of taking nearly 5.5 million cars off the road each year, and saving $24 billion over 30 years.

7.     Accordingly, Plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201(a) that DOE has failed to submit the New Standards for publication within the required timeframe (30 days after the 45-day correction request period) in violation of EPCA, 42 U.S.C. § 6313; 10 C.F.R § 430.5(f), the APA, 5 U.S.C. § 552(a)(1)(D), and the FRA, 44 U.S.C. § 1503; and that DOE has

---

(…continued)
Supplies, Docket No. EERE-2016-BT-STD-0022 (posted Dec. 28, 2016); Energy Conservation Standards for Air Compressors, Docket No. EERE-2013-BT-STD-0040 (posted Dec. 5, 2016); Energy Conservation Standards for Walk-in Cooler and Freezer Refrigeration Systems, Docket No. EERE-2015-BT-STD-0016 (posted Dec. 28, 2016); Energy Conservation Standards for Commercial Packaged Boilers, Docket No. EERE-2013-BT-STD-0030 (posted Dec. 28, 2016).
    [2] A quad is defined as one quadrillion Btu (1,000,000,000,000,000 Btu) by the DOE. Glossary of Energy Related Terms, Office of Energy Efficiency and Renewable Energy (accessed June 7, 2017 9:15 AM), https://energy.gov/eere/energybasics/articles/glossary-energy-related-terms#Q.

failed to meet its statutory obligation to revise standards for walk-in coolers and freezers and to enact standards for uninterruptible power supplies by applicable statutory deadlines in violation of EPCA, 42 U.S.C. § 6305(a)(3).  Plaintiffs also seek a permanent injunction pursuant to 42 U.S.C. §§ 6305(a) and 6316(a)-(b) requiring DOE to immediately publish the New Standards as final rules.

## PARTIES

### A.    Plaintiffs

8.    Plaintiff the People of the State of California bring this action by and through Attorney General Xavier Becerra.  The Attorney General is the chief law enforcement officer of the State and has the authority to file civil actions in order to protect public rights and interests, including actions to protect the natural resources of the State.  *See* Cal. Const., art. V, § 13; Cal. Gov. Code §§ 12600-12612.  This challenge is brought pursuant to the Attorney General's independent constitutional, statutory, and common law authority to represent the public interest.

9.    Plaintiff State of New York is a sovereign entity and brings this action by and through Eric T. Schneiderman, Attorney General, to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents.

10.    Plaintiff State of Washington is a sovereign entity and brings this action to protect its own sovereign and proprietary rights, and as *parens patriae* on behalf of its affected citizens and residents. The Attorney General is the chief legal adviser to the State of Washington. The Attorney General's powers and duties include acting in federal court on matters of public concern. This challenge is brought pursuant to the Attorney General's independent constitutional, statutory, and common law authority to bring suit and obtain relief on behalf of the State of Washington.

11.    Plaintiff the People of the State of Maine bring this action by and through Attorney General Janet Mills.  The Attorney General is a constitutional officer with statutory authority to file civil actions in which the State is a party, and common law authority to institute such actions as she deems necessary for the protection of public rights.  Constitution of Maine, Art. IX, § 11; 5

3

1  M.R.S. §§ 191; 192 (2015); *Superintendent of Ins. v. Attorney General,* 558 A.2d 1197, 1199

2  (Me. 1989).

3       12.    Plaintiff the State of Connecticut brings this action by and through its Attorney

4  General George Jepsen on behalf of its citizens and natural resources.

5       13.    Plaintiff the People of the State of Illinois bring this action by and through Attorney

6  General Lisa Madigan.  The Attorney General is the chief legal officer of the State of Illinois, Ill.

7  Const., Art. V, § 15, and "has the prerogative of conducting legal affairs for the State." *Envtl.*

8  *Prot. Agency v. Pollution Control Bd.*, 372 N.E.2d 50, 51 (Ill. 1977).  She has common law

9  authority to represent the People of the State of Illinois and "an obligation to represent the

10  interests of the People so as to ensure a healthful environment for all the citizens of the

11  State." *People v. NL Industries*, 604 N.E. 2d 349, 358 (Ill. 1992).

12       14.    Plaintiff the State of Vermont brings this action by and through Vermont Attorney

13  General Thomas J. Donovan, Jr.  The Attorney General is the State of Vermont's chief legal

14  counsel and is vested with broad authority and powers to protect the State's citizens.  Vt. Stat.

15  Ann. tit. 3, § 152 (Attorney General "may represent the state in all civil and criminal matters as at

16  common law and as allowed by statute").  The Attorney General appears for Vermont in all cases

17  in which Vermont is a party, or when the interests of Vermont so require; and has "general

18  supervision of matters and actions" for Vermont.  *Id.*, §§ 157, 159.  This action is brought

19  pursuant to the Attorney General's authority to protect the interests of Vermont.

20       15.    Plaintiff the State of Oregon is a sovereign entity and brings this action to protect its

21  sovereign and proprietary rights. The Attorney General is the chief legal officer of the State of

22  Oregon. The Attorney General's duties include acting in federal court when requested by any state

23  officer when, in the discretion of the Attorney General, the action may be necessary or advisable

24  to protect the interests of the state. ORS 180.160(1)(d). The Oregon Department of Energy,

25  established as a state agency by the Oregon Legislature pursuant to ORS Chapter 469, has

26  requested that the Attorney General bring this suit to protect Oregon's sovereign and proprietary

27  interest in energy conservation.

28

4

16.     Plaintiff the State of Maryland, is a sovereign state represented by and through Maryland Attorney General Brian Frosh.  The Attorney General is the chief law enforcement officer of Maryland and has the authority to file civil actions on behalf of Maryland and the people of Maryland in the federal courts on matters of public concern.  These matters include the federal government's action or inaction that threatens the public interest and welfare of the residents of the State, including acts that harm the environment and natural resources of Maryland.  2017 Md. Laws J.R. 1; Md. Const., Art. V, § 3.

17.     Plaintiff the Commonwealth of Massachusetts brings this action by and through Massachusetts Attorney General Maura Healey.  Attorney General Healey is the chief legal officer of the Commonwealth and is authorized to bring this action on behalf of the Commonwealth, on behalf of ratepayers in the Commonwealth, and, as *parens patriae*, on behalf of the residents of the Commonwealth, pursuant to her statutory authority under Mass. Gen. L. ch. 12, §§ 11D and 11E.

18.     Plaintiff Commonwealth of Pennsylvania brings this action by and through Attorney General Josh Shapiro, "the chief law officer of the Commonwealth," to protect its own sovereign and proprietary rights and, separately, as *parens patriae* on behalf of its affected citizens and residents.  Pa. Const., Art. IV, sec. 4.1. Attorney General Shapiro is authorized to bring this action on behalf of the Commonwealth pursuant to his statutory authority under 71 P.S. § 732-204.

19.     Plaintiff City of New York brings this action by and through its counsel, Zachary W. Carter, Corporation Counsel of the City of New York. The City of New York is a municipal corporation organized under the laws of the State of New York. The Corporation Counsel has the right to bring actions to maintain, defend and establish the rights, interest or demands of the City or the People thereof. New York City Charter § 394(c).

20.     Plaintiffs' interests. Plaintiffs collectively have significant proprietary and sovereign interests in increased energy efficiency and reduced energy use within their jurisdictions, in protecting their populations and environments, and in enforcing their laws designed to foster energy efficiency and reduce climate change related impacts.  Those interests and efforts are undermined by DOE's failure to publish the New Standards in the Federal Register as final rules.

5

The New Standards save energy, lower energy bills, reduce air pollution emissions and related public health impacts, produce a more reliable energy grid, reduce the likelihood of electricity shortages and blackouts, and alleviate the need to build new power plants.  Each of the Plaintiffs relies on energy efficiency regulations as a key part of its strategy to reduce climate change-related impacts and achieve its greenhouse gas ("GHG") reduction goals. DOE's failure to publish the efficiency standards for air compressors, commercial packaged boilers, walk-in cooler and freezer refrigeration systems, portable air conditioners, and uninterruptible power supplies harms Plaintiffs by delaying the energy efficiency benefits the New Standards achieve.  In the absence of a declaratory judgment and permanent injunction requiring DOE to publish the New Standards as final in the Federal Register, this delay will continue to cause the aforementioned harms to Plaintiffs and is likely to continue indefinitely.

21.  California.  California seeks to protect its sovereign and proprietary interests in achieving the State's objectives to reduce GHG emissions and increase energy efficiency. California law establishes targets to reduce the State's GHG emissions to 1990 levels by 2020 and to 40 percent below 1990 levels by 2030. See California Global Warming Solutions Act of 2006 (Assembly Bill 32, Chapter 488, September 27, 2006 and Senate Bill 32, Chapter 249, September 8, 2016); Cal. Health & Safety Code § 38500-38599. To achieve the 2030 target, the California legislature has directed the State Energy Resources Conservation and Development Commission ("California Energy Commission" or "CEC") to double energy efficiency savings in electricity and natural gas final end uses by 2030. See Clean Energy and Pollution Reduction Act of 2015 (Senate Bill 350, Chapter 547, October 7, 2015), Cal. Pub. Res. Code § 25310; see also Cal. Pub. Res. Code § 25402 (mandating that the CEC reduce the wasteful, uneconomic, inefficient, or unnecessary consumption of energy through the adoption of building and appliance energy efficiency standards). In addition to the State's climate-related laws that prioritize energy efficiency for reducing GHGs emissions, energy efficiency is a key component to helping California manage an aging energy infrastructure and meeting the State's growing electricity needs. See California Energy Commission, 2016 Integrated Energy Policy Report Update, at p. 8, http://docketpublic.energy.ca.gov/PublicDocuments/16-IEPR-

1    01/TN216281_20170228T131538_Final_2016_Integrated_Energy_Policy_Report_Update_Com

2    plete_Repo.pdf; *see also* California Energy Commission, 2007 Integrated Energy Policy Report,

3    at p. 3, http://www.energy.ca.gov/2007publications/CEC-100-2007-008/CEC-100-2007-008-

4    CMF.PDF (describing California's "loading order," which mandates using energy efficiency and

5    demand response before new power plants to meet the State's growing energy demand).  Energy

6    efficiency standards have helped kept California's per capita electricity consumption relatively

7    flat when compared to states without efficiency standards.  DOE's failure to finalize the New

8    Standards stalls California's efforts to reach its energy efficiency and GHG reduction goals.

9        22.  New York. Among the interests that New York seeks to protect are its sovereign and

10   proprietary interests in maintaining a clean, resilient, and affordable energy system for itself and

11   its citizens. N.Y. Energy Law § 3-101. New York's 2015 State Energy Plan identifies several key

12   clean energy goals for the year 2030 which include a 40 percent reduction in GHG emissions

13   from 1990 levels, increasing the percentage of total energy produced from renewable energy

14   sources to 50 percent, and a 600 trillion British thermal unit increase in state-wide energy

15   efficiency gains. N.Y. Pub. Serv. Comm'n, Case 15-E-0302, Order (August 1, 2016).  In order to

16   achieve these goals, New York has adopted a Clean Energy Standard outlining regulatory

17   programs and policies to facilitate the transition to more sustainable energy sources and

18   aggressively pursue energy efficiency.  *Ibid.*  The Clean Energy Standard builds upon New

19   York's earlier efforts to boost efficiency, such as the state's implementation of its Energy

20   Efficiency Portfolio Standard which sought to reduce total electricity consumption in the state 15

21   percent by 2015. N.Y. Pub. Serv. Comm'n, Case 07-M-0548, Energy Efficiency Portfolio

22   Standard, Order (June 23, 2008). DOE's failure to timely promulgate energy efficiency standards

23   is inconsistent with and undermines these efforts by New York State.

24       23.  Maine. Maine seeks to protect its sovereign and proprietary interest in achieving a

25   clean and affordable energy system for itself and its citizens.  The Maine Legislature has declared

26   that air pollution and acid deposition present a severe threat to Maine's natural resources, public

27   health, and economy.  (38 M.R.S. § 581 (2015); 38 § M.R.S. 603-B (2015)).  Reducing electrical

28   consumption nationally will assist in reducing air pollution from utilities to the south and west

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   whose emissions significantly impact Maine.  On top of this threat, Maine has above average

2   energy costs and an industrial sector that consumes more than 30 percent of the State's electricity.

3   Governor's Energy Office, Maine Comprehensive Energy Plan Update ("Maine Energy Plan"),

4   18-19 (Feb. 2016).  The high cost of energy is viewed as the single greatest challenge to growing

5   Maine's economy.  *Id.* at 19. In an effort to lower energy costs and reduce pollution, Maine's

6   clean energy goals include reducing GHG emissions to 10 percent below 1990 levels by 2020 (38

7   M.R.S. § 576 (2)(2015), investing in energy efficiency programs, (Maine Energy Plan, at 17-21),

8   reducing energy consumption in state owned facilities, (5 M.R.S. § 1764-A (2015), and

9   committing to renewable energy (Maine Energy Plan, at 45). DOE's failure to timely promulgate

10   energy efficiency standards has negative economic and environmental consequences for Maine

11   and undermines Maine's energy policies that rely on energy efficiency gains.

12        24.  Connecticut.  The State of Connecticut has undertaken extensive efforts to increase

13   energy efficiency and reduce energy consumption, efforts which are undermined by DOE's failure

14   to timely promulgate these energy efficiency standards.  Connecticut has enacted legislation

15   supporting the conservation of energy and continues to act to protect its sovereign interests and

16   the goals outlined in its statutorily required state comprehensive energy plan that specifically

17   targets energy efficiency and demand reduction. Connecticut General Statutes Sections 16a-1,

18   16a-3d, 16a-35k.  In addition, Connecticut has extensive programs targeting residential and

19   commercial energy efficiency and spends up to $246 million annually to reduce energy

20   consumption.  Connecticut General Statutes Sections 16a-46e through 46j.

21        25.  Illinois.  Among the interests that Illinois seeks to protect is its public policy "to

22   provide and maintain a healthful environment for the benefit of this and future generations."  Ill.

23   Const., Art. XI, § 1.  The Illinois General Assembly has found that the health, welfare, and

24   prosperity of all Illinois citizens requires adequate, reliable, affordable, efficient, and

25   environmentally sustainable electric service.  20 ILCS 3855/1-5.  In 2016 Illinois enacted

26   legislation to update and expand its existing renewable power and energy efficiency

27   standards.  *See* Public Act 99-0906.  Illinois has established a renewable energy goal of 25

28   percent by 2025 and an energy efficiency goal of 21.5 percent cumulative persisting annual

8

savings by 2030 in the state's largest utility area.  20 ILCS 3855/1-75(c)(1)(B), 220 ILCS 5/8-103B(b-5).  DOE's failure to timely promulgate energy efficiency standards is inconsistent with and undermines Illinois' pursuit of a clean and efficient electric sector.

26.  Vermont.  Among the interests that Vermont seeks to protect are its sovereign and proprietary interests in meeting renewable energy goals and maintaining an energy policy that reduces global climate change, develops viable markets for energy efficiency products, and assures "efficient use of energy resources" to the "greatest extent practicable."  Vt. Stat. Ann. tit. 30, §§ 202a, 8001(a); *see also id*. §§ 209(d), 218c (providing goals and requirements for energy efficiency and conversation programs, including development of "comprehensive energy efficiency programs").  Specifically, Vermont's Department of Public Service (DPS) represents the public interest in energy and telecommunications matters.  *See generally id.,* § 2.  Toward that end, the DPS is charged with preparing a "State Comprehensive Energy Plan" to implement the State's energy policy. *Id.,* § 202b.  Energy efficiency is a key component of that plan, including extensive recommendations specific to efficiency programs.  2016 State of Vermont Comprehensive Energy Plan, § 10.2 Electric Energy Efficiency, https://goo.gl/Uh48nR; *see also* Vermont Residential Building Energy Code Handbook 9-20 (2015), https://goo.gl/QkznQ8 (providing basic requirements for residential construction, including numerous efficiency measures).  State of Vermont DPS, Efficiency (2017),  https://goo.gl/7KgQpq.  DPS also oversees two energy efficiency utilities that deliver efficiency services to consumers throughout Vermont.  DOE's failure to timely publish energy efficiency standards is inconsistent with Vermont's goals and makes it more difficult to achieve energy efficiency to the greatest extent practicable.

27.  Oregon. The State of Oregon has numerous sovereign and proprietary programs and goals designed to increase energy efficiency. The promotion of energy conservation is a part of the Oregon Department of Energy's core mission and authority. ORS 469.010(1)(b). Oregon has adopted its own energy efficiency standards for various categories of products. ORS 469.229 - .261. Oregon also requires its large investor-owned electric utilities to identify and capture all cost effective electric efficiency improvements in their service territories. ORS 757.600 - .689. With respect to publicly-owned buildings, Oregon has set a goal of 20 percent energy use

9

reduction in all state-owned buildings by 2023, and has established a funding mechanism to increase energy efficiency in schools. ORS 276.900 - .915; ORS 757.600 - .689. In addition, Oregon is a part of the Northwest Power and Conservation Council. In its Seventh Power Plan, the Northwest Power and Conservation Council calls for the region to pursue cost-effective energy efficiency to meet all electricity load growth through 2030. In addition to meeting the region's future electricity needs, the Council considers efficiency to be the single largest source of new peaking capacity. Northwest Power and Conservation Council Seventh Northwest Power Plan, Executive Summary (available at: https://www.nwcouncil.org/energy/powerplan/7/plan). The federal appliance efficiency standards are essential to meeting the targets of the Seventh Power Plan. *Id*. at Appendix F, p. F-3. The federal standards will also help Oregon meet its greenhouse gas emission reduction goals. 2007 Or. Laws Ch. 907.  As such, Oregon is interested in ensuring that the EPCA standards at issue are duly published in accordance with DOE's non-discretionary duty.

28.  <u>Maryland.</u>  The State of Maryland has a compelling interest in bringing this action as a means of furthering its energy efficiency and energy reduction, and environmental protection goals. Specifically, Maryland has devoted significant time and resources to increase energy efficiency and reduce energy use. Under the EmPOWER Maryland Energy Efficiency Act of 2008, for example, the State originally set a goal of achieving a 15 percent reduction in energy consumption and a 15 percent reduction in peak electricity demand by 2015.  Md. Code Ann., Pub. Util. Cos. § 7-211.  Recent legislation extended the program by stating that to the extent the Maryland Public Service Commission determines that cost-effective energy efficiency and conservation programs and services are available, the Commission shall require each electric company to procure or provide for its customers cost-effective energy efficiency and conservation programs and services with projected and verifiable electricity savings that are designed on a trajectory to achieve a targeted annual incremental gross energy savings of at least 2.0 percent per year, calculated as a percentage of the electric company's 2016 weather-normalized gross retail sales and electricity losses.  Maryland's Public Service Commission has six open and active dockets (PSC Case Nos. 9153, 9154, 9155, 9156, 9157, and 9362) focused on evaluating and

10

approving utility plans and progress toward achieving the energy efficiency targets established under the Act.  Maryland's Jane E. Lawton Conservation Loan Program provides low interest loans to promote energy conservation and energy efficiency in the State.  Md. Code Ann., State Gov't §§ 9-20A-01, *et. seq.*  Also, Maryland's Strategic Energy Investment Program and Fund provides financial and other assistance and incentives to promote cost-effective energy efficiency and conservation measures in the State.  DOE's failure to promulgate energy efficiency standards in accordance with EPCA is inconsistent with Maryland's efforts in this regard.  Additionally, the economic and environmental benefits from DOE energy efficiency standards, such as those at issue in this matter, result in utility cost savings for Maryland residents, and constitute feasible and economical ways to significantly reduce carbon dioxide and other GHG emissions. Maryland seeks to ensure that these national standards become effective as a critical component of the State's broader efforts to reduce air pollution. Greenhouse gas emissions pose a significant threat to public health and climate stability. Maryland, like other states, has enacted GHG emission limitations across various sectors of the State's economy. *See, e.g.*, Md. Code Ann., Envir., § 2–1204 (requiring Maryland to reduce statewide GHG emissions by 25 percent from 2006 levels by 2020), Md. Code Ann., Envir., §§ 2–1102 and 1103 (requiring the Maryland Department of the Environment to establish a low emissions vehicle program by adopting California's emissions standards), Md. Code Ann., Pub. Utilities § 7-703 (Maryland's renewable energy portfolio standard), Md. Code Ann., Envir., § 2–1301 (establishing the Maryland Commission on Climate Change), § 7-211 (requiring Maryland gas and electric companies to develop and implement programs and services to encourage and promote energy efficiency and conservation of energy); Md. Code Ann., Envir., § 2-1002(g). Thus, DOE's failure to promulgate energy efficiency standards in accordance with EPCA is further inconsistent with Maryland's efforts to prevent and mitigate climate change harms, and to protect State citizens from other forms of dangerous air pollution.

29.  <u>Commonwealth of Massachusetts.</u> The Commonwealth of Massachusetts has vital interests that are compromised by DOE's failure timely to submit for publication these final rules that strengthen energy efficiency standards for the subject product categories.  To reduce energy

11

1   costs and to protect public health (including reducing respiratory disease in vulnerable infants and

2   young children in Massachusetts) and the climate by reducing air pollutant and GHG emissions

3   from the electric sector, Massachusetts has implemented many laws that mandate, and secure the

4   many benefits of, energy efficiency.  Since passage of the Electricity Restructuring Act of 1997,

5   1997 Mass. Acts ch. 164, electric investor-owned utilities in the Commonwealth have been

6   required to implement energy efficiency programs so that today more than 2 percent of

7   Massachusetts' annual electricity needs are met through efficiency.  *2016 State Energy Efficiency*

8   *Scorecard*, American Council for an Energy-Efficient Economy (Sept. 26, 2016).  In 2005,

9   Massachusetts amended its appliance standards law, Mass. Gen. L. ch. 25B, to set more stringent

10  efficiency standards for certain appliances and equipment.  St. 2005, c. 139, An Act Establishing

11  Minimum Energy-Efficiency Standards for Certain Products.  The Green Communities Act, 2008

12  Mass. Acts ch. 169, mandates that Massachusetts procure "all available energy efficiency and

13  demand reduction resources that are cost effective or less expensive than supply," Mass. Gen. L.

14  ch. 25, § 21(b)(1), which was set at 2.93 percent of retail electric sales and 1.24 percent of retail

15  gas sales in 2016, and increases through 2018.  *Three-Year Energy Efficiency Plan for 2016*

16  *through 2018*, D.P.U. 15-160 through 15-169, p. 14 (Jan. 28, 2016).  In 2008, Massachusetts also

17  enacted the Global Warming Solutions Act, 2008 Mass. Acts ch. 298, requiring an economy-wide

18  state GHG reduction target between 10 percent and 25 percent below 1990 levels by 2020, with a

19  goal of an 80 percent reduction by 2050, while significantly committing the state to energy

20  efficiency.  Mass. Gen. L. ch. 21N, added by St. 2008, c. 298, § 6, eff. Nov. 5, 2008.  In 2010, the

21  Commonwealth set the 2020 target at 25 percent below statewide 1990 GHG levels.  *See*

22  Determination of Greenhouse Gas Limit for 2020 (Dec. 28, 2010),

23  http://www.mass.gov/eea/docs/eea/energy/2020-ghg-limit-dec29-2010.pdf. And the

24  Commonwealth has developed its Clean Energy and Climate Plan for 2020, requiring reduced

25  fossil fuel use in buildings through, among others, the increased efficiency of equipment,

26  including appliances.  Massachusetts building codes also set high standards for energy efficiency

27  performance.  For these efforts, Massachusetts has earned for six consecutive years the number

28  one ranking by the American Council for an Energy–Efficient Economy as the leading state in

12

1    energy efficiency.  DOE's failure timely to promulgate the subject energy efficiency standards for

2    these commonly used consumer and commercial products widely available in Massachusetts, is

3    inconsistent with, and undermines, Massachusetts' multifaceted efforts to increase

4    energy efficiency in the Commonwealth.

5          30.  Pennsylvania. The Pennsylvania Constitution provides that the people "have a right to

6    clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of

7    the environment" and obligates the Commonwealth to "conserve and maintain" Pennsylvania's

8    natural resources.  Pa. Const. art. I, § 27.  Consistent with this obligation, the Commonwealth has

9    a special interest in energy conservation and encourages the use of energy efficient appliances

10   and equipment.  For example, the Pennsylvania Department of Environmental Protection, the

11   Commonwealth's primary environmental agency, implements a number of energy conservation

12   and efficiency programs under statutes such as the Energy Development Authority Law, 71 P.S. §

13   720.1 et seq., and the Small Business and Household Pollution Prevention Program Act, 35 P.S. §

14   6029.201 et seq.  By 2035, delay of these rules would lead to an increased consumption of 1 TWh

15   of electricity and 1 TBtu of gas, an increased output of 0.5MMT of $CO_2$, and additional costs of

16   $113 million per year in the Commonwealth. Cumulatively, by 2050, delay would lead to 0.24

17   quads of increased energy consumption, 12.42 MMT of additional $CO_2$ emissions, and $2.86

18   billion in additional costs.  DOE's failure to strengthen energy efficiency standards for the

19   product categories in violation of the EPCA undermines the Commonwealth's interest in

20   encouraging energy conservation and efficiency and will lead to increased energy consumption

21   and pollution in Pennsylvania, degrading the constitutional rights of Pennsylvanians "to clean air,

22   pure water, and to the preservation of the natural, scenic, historic and esthetic values of the

23   environment".

24         31.  City of New York. Among the interests the City of New York seeks to protect is its

25   governmental and proprietary interest in ensuring a clean, affordable, resilient, and reliable

26   energy.  As a low-lying coastal community with 520 miles of coastline, which has already

27   experienced the devastating effects of climate change, the City of New York has a compelling

28   interesting in ensuring the reduction of GHGs to mitigate against climate change.  The City of

New York has committed to a GHG reduction goal of 80 percent by 2050 and any additional reductions needed to meet its share of the Paris Agreement reduction goals. *See* One New York: The Plan for a Strong and Just City (2015), 166-71 (outlining reductions needed from the power sector to meet this goal); City of New York Office of the Mayor Executive Order No. 26 of 2017 (directing the Mayor's Office of Sustainability and city agencies to create a citywide plan by September 30, 2017 to advance the Paris Agreement's goal of limiting global temperature increases to 1.5° Celsius above pre-industrial levels).  Energy efficiency standards for appliances help the City of New York meet these important goals.  Accordingly, DOE's failure to improve energy efficiency standards as required by EPCA is contrary to New York City's interests and efforts in this regard.

32.  The state and municipal Plaintiffs also have strong proprietary interests in improving energy efficiency and ensuring that DOE complies with EPCA.  For example, many of the Plaintiffs purchase and use the appliances for which DOE has developed updated efficiency standards. These appliances are used in state- or city-owned office buildings, warehouses, maintenance shops, hospitals, and residential care or educational facilities. Plaintiffs will face increased energy costs if DOE fails to publish the five New Standards. In addition, some of the Plaintiff states, such as New York, provide direct financial assistance to low income households to reduce energy costs, which may be higher in the absence of efficiency standards such as DOE's new standard for portable air conditioners. Many states also pay for some or all of the medical costs of many of their residents. Increased pollution due to less efficient products can lead to negative health effects which in turn result in increased need for medical care and higher medical costs.

### B.    Defendants

33.  Defendant James Richard Perry is Secretary of DOE, and is named in his official capacity.  He is responsible for the administration of that agency in accordance with EPCA, 42 U.S.C. §§ 6291-6317, and the APA, 5 U.S.C. §§ 551-706. Under EPCA, he is responsible for promulgating the energy efficiency standards at issue in this case. 42 U.S.C. §§ 6313(b)(4)(B), 6313(c)(5)(A), 6313(f)(4)(A).

34.  Defendant DOE is an agency of the United States.  DOE's headquarters are located at 1000 Independence Ave., SW, Washington, DC 20585.  It is the agency responsible for the implementation of EPCA, 42 U.S.C. §§ 6291-6317.

### JURISDICTION, NOTICE, AND VENUE

35.  This Court has jurisdiction over matters raised pursuant to 42 U.S.C. §§ 6305(a)(2)-(3) (EPCA's citizen suit provision), and § 6316, and 5 U.S.C. § 702.  In addition, the Court has jurisdiction based on 28 U.S.C. § 1331 (action arising under the laws of the United States), § 1346(a)(2) (civil action against the United States).

36.  This Court has the authority to grant the requested declaratory and injunctive relief pursuant to § 2201 (declaratory judgment), § 2202 (injunctive relief), 42 U.S.C. § 6305(a)(2)-(3), and 5 U.S.C. §§ 702-706 (providing for judicial review under the APA).

37.  An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this court may grant declaratory relief, injunctive relief and other relief pursuant to 28 U.S.C. §§ 1361,1346, 2201-2202, and 5 U.S.C. §§ 704-706 (providing for judicial review under the APA).

38.  To the extent notice is required with respect to any of the claims herein (42 U.S.C. § 6305(b)(2)), notice of this action was provided to the Secretary by certified mail dated April 3, 2017 with a copy to the Federal Trade Commission. *See* Exhibit A.

39.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(e) because this is the judicial district in which Plaintiff People of the State of California, ex rel. Attorney General Xavier Becerra resides, and this action seeks relief against an agency of the United States and officials acting in their official capacities.

40.  Pursuant to Local Rule 3-2(c) and (d), assignment to the Oakland Division is appropriate because the assigned attorneys representing Plaintiff People of California are based in the Attorney General's Oakland office.

### STATUTORY AND FACTUAL BACKGROUND

### A.  The Energy Policy Conservation Act

41.  Energy efficiency standards are one of the most cost-effective tools available to the federal government to achieve large-scale energy conservation.  Energy efficiency standards reduce the adverse environmental impacts of energy consumption, such as air, land, and water pollution associated with fossil fuel extraction and electricity generation, without compromising product performance.

42.  EPCA establishes mandatory efficiency standards for a broad range of consumer, commercial, and industrial products, and requires DOE to periodically review such standards to determine whether they should be amended. *See* 42 U.S.C. §§ 6295, 6313.

43.  In requiring DOE to set and revise energy efficiency standards, Congress mandated that DOE follow specific criteria. Thus, the Act requires DOE to ensure that efficiency standards are "designed to achieve the maximum improvement in energy efficiency . . . which the Secretary determines is technologically feasible and economically justified." *Id.* § 6295(o)(2)(A); *see also id.* §§ 6313(b)(3)(A)(ii), (f)(4)(A), 6316(a)-(b), (e)(1)(A). The Act also includes an anti-backsliding provision specifying that "[t]he Secretary may not prescribe any amended standard" that "decreases the minimum required energy efficiency" of a "covered product." *Id.* §§ 6295(o)(1), 6316(a)-(b), (e)(1)(A). Congress also set forth the procedures for DOE to follow in efficiency standard rulemakings. *Id.* §§ 6295(p), 6306(a), 6316(a)-(b).

44.  With respect to most products covered by EPCA, DOE is required to conduct and complete further rulemakings to determine whether existing standards should be updated. *Id.* EPCA mandates that DOE review energy efficiency standards every six years and determine either that the standards do not need to be amended, (42 U.S.C. § 6313(a)(6)(c)(i)(I)), or issue a notice of proposed rulemaking for revised standards. 42 U.S.C. § 6313(a)(6)(C).

45.  DOE estimates that, by 2030, federal product energy standards will save a total of 120 quads of energy, or about twenty percent more energy than the United States uses in a year.  Over the same time period, these energy standards will save energy customers a total of $1.6 trillion. The existing standards also provide substantial pollution reductions, including reducing climate change pollution by 6.5 billion tons of carbon dioxide, the same amount as taking all automobiles worldwide off the roads for nearly a year and half.

16

### B.   EPCA's Error Correction Rule

46.   DOE published the proposed Error Correction Rule in the Federal Register on May 5, 2016, and adopted it on August 24, 2016, with an effective date as of September 30, 2016. *See* 10 C.F.R. § 430.5.

47.   As explained by its preamble, the Error Correction Rule is intended to avoid the potentially significant repercussions of an error caused by the complexity of the energy standards, given EPCA's anti-backsliding provision. 81 Fed. Reg. 26,998-26,999.  As the energy efficiency rules are highly technical and complex, it is "conceivable" that a standard as issued would contain an error. *Id*. Once a rule is published, DOE is prohibited by statute from correcting that error if it would result in a less stringent efficiency standard. 42 U.S.C. § 6295(o)(1).

48.   In order to avoid the potential unintended effects caused by an error enshrined in future regulation through the anti-backsliding provision, the Error Correction Rule provides a procedure for the identification and correction of such errors prior to publication in the Federal Register.

49.   Under the Error Correction Rule, an "Error" is "an aspect of the regulatory text of a rule that is inconsistent with what the Secretary intended regarding the rule at the time of posting." 10 C.F.R. § 430.5(b) ("Error"). This could include the following types of errors:

a. "a typographical mistake that causes the regulatory text to differ from how the preamble to the rule describes the rule."

b. "a calculation mistake that causes the numerical value of an energy conservation standard to differ from what technical support documents would justify."

c. "a numbering mistake that causes a cross-reference to lead to the wrong text." *Id*.

50.   Under the Error Correction Rule's procedure, once DOE has completed the substantive consideration of a rule, DOE posts the finalized rule on a publicly-accessible website to allow for public review. 10 C.F.R. § 430.5(c)(1). The posted version of the rule includes a disclaimer requesting that the public notify the DOE of any "typographical or other errors" in the posted rule within 45 calendar days. 10 C.F.R. § 430.5(c)(3). The Secretary is directed not to publish the rule during the 45 calendar days following posting. 10 C.F.R. § 430.5(c)(2).

51.  During the 45 days following posting, interested members of the public may submit requests for error correction. 10 C.F.R. § 430.5(d)(1). The request must identify the error "with particularity" and must provide a corrected substitute text or state that the requestor is unable to do so and explain why. 10 C.F.R. § 430.5(d)(2)(i).

52.  Disagreement with substantive policy choices made by the Secretary is not a valid basis for an error request. 10 C.F.R. § 430.5(d)(2)(ii). Evidence substantiating a request must be in the record of the rulemaking itself; the Secretary will not consider new evidence. 10 C.F.R. § 430.5(d)(3).

53.  Under the Error Correction Rule, the Secretary may respond to an error correction request, or address an error identified by the Secretary, by submitting to the OFR either a corrected rule or the rule as originally posted. 10 C.F.R. § 430.5(e).

54.  After the 45-day period prescribed by 10 C.F.R. § 430.5(c)(1) and referenced by 10 C.F.R. § 430.5(d)(1) has expired, the Secretary must take one of three actions under 10 C.F.R. § 430.5(f):

a.  If the Secretary has received properly filed requests but determines not to make any corrections, the Secretary must submit the rule to OFR for publication as it was originally posted. 10 C.F.R. § 430.5(f)(1).

b.  If the Secretary receives no properly submitted requests and no errors are identified by the Secretary, the Secretary must submit the rule to OFR for publication as it was originally posted "in due course." 10 C.F.R. 430.5(f)(2).

c.  If the Secretary receives a properly filed request and determines a correction is necessary, the Secretary will submit a corrected rule to OFR for publication within 30 days of the expiration of the 45-day period, absent "extenuating circumstances." 10 C.F.R. § 430.5(f)(3).

55.  Thus, if the Secretary does not make any error corrections, he must submit the originally posted rule to the OFR for publication. 10 C.F.R. § 430.5(f)(1)-(2). If the Secretary does receive error correction requests that justify modifying the text of the rule, the Secretary must make those corrections and submit the corrected rule to OFR within 30 days of the expiration of the error review period. 10 C.F.R. § 430.5(f)(3).

18

56.   Only under "extenuating circumstances," such as where an error correction request pertains to a "particularly complex engineering analysis" or involves a time-consuming error correction (81 Fed. Reg. 57,745, 57,750 (Aug. 24, 2016)), is DOE authorized to delay submission of a corrected rule for publication. 10 C.F.R. § 430.5(f)(3). *Id.* at 57,750-51 ("this flexibility will ensure DOE has sufficient time to . . . make any necessary corrections . . . *prior to its publication* in the Federal Register" (emphasis added)).

57.   DOE does not dispute that it has a duty under the APA to publish in the Federal Register the standards that it posts for error correction: "DOE recognizes that it has an obligation under the Administrative Procedure Act to publish a 'rule,' as defined in this part, in the Federal Register." 81 Fed. Reg. at 27,001.

58.   Thus, regardless of the complexity of an alleged error or DOE's ultimate determination as to whether correction is warranted, the Error Correction Rule requires DOE to submit posted, final energy efficiency rules to OFR for publication.  10 C.F.R. § 430.5(f). Notably, the Error Correction Rule does not give DOE an option to do nothing.

59.   The New Standards at issue in this case are currently awaiting their mandated publication after undergoing the error review period prescribed by the Error Correction Rule. 10 C.F.R. § 430.5.

### C.   Judicial Review under EPCA

60.   EPCA contains a "citizen suit" provision.  Under this provision, "any person may commence a civil action" in a United States district court against the Secretary of DOE "in any case in which there is an alleged failure of the Secretary to comply with a nondiscretionary duty to issue a proposed or final rule according to the schedules set forth in [EPCA]." 42 U.S.C. § 6305(a), (a)(2), (a)(3), 6316(a)-(b).

61.   Plaintiffs are "persons" within the meaning of EPCA and its citizen suit provision. *Id.* § 6202(2)(C).

62.   EPCA further provides that, with respect to causes of action pursuant to 42 U.S.C. § 6305(a)(3), "courts shall advance on the docket, and expedite the disposition of" these actions. "If the court finds that the Secretary has failed to comply with a deadline established in [EPCA]," the

19

court "shall have jurisdiction to order appropriate relief, including relief that will ensure the Secretary's compliance with future deadlines for the same covered product." *Id.* § 6305(a). Finally, EPCA provides that the court may award costs, including reasonable attorneys' fees, in issuing an order in a citizen suit action. *Id.* § 6305(d).

### D.  The Administrative Procedure Act

63.  The Administrative Procedure Act, as amended by the Freedom of Information Act, 5 U.S.C. § 552, provides that federal agencies like DOE shall publish "substantive rules of general applicability" in the Federal Register for guidance to the public.  5 U.S.C. § 552(a)(1)(D).

64.  The Administrative Procedure Act, 5 U.S.C. § 702, provides that a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action is entitled to judicial review.

65.  The Administrative Procedure Act, 5 U.S.C. § 555(b), provides that each agency shall conclude matters "within a reasonable time."

66.  The Administrative Procedure Act, 5 U.S.C. § 704, provides that final agency action for which there is no other adequate remedy in a court is subject to judicial review.

67.  The scope of review under the APA provides that a reviewing court shall: "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law; [or] without observance of procedure required by law." 5 U.S.C. § 706. The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).

### E.  Federal Register Act

68.  The Federal Register Act, 44 U.S.C. §§ 1501 et seq., created the Federal Register as the official daily publication for presidential documents, executive agency rules and notice documents, and established a central location for filing documents for public inspection.  The FRA established the basic structure of the federal regulatory system, and mandates which federal agency documents shall be published in the Federal Register.  44 U.S.C. § 1505(a).

20

1         **F.**   **DOE's Five New Standards Undergoing Error Review**

2       69.  In December 2016, DOE completed its substantive analysis for the five New

3  Standards in compliance with EPCA, 42 U.S.C. §§ 6291 et seq.  DOE determined that the new

4  energy conservation standards would result in significant conservation of energy, yield significant

5  environmental benefits, and were technologically feasible, and economically justified. The New

6  Standards for air compressors, commercial packaged boilers, portable air conditioners, walk-in

7  coolers and freezers, and uninterruptible power supplies were signed as "final rules" and each was

8  posted for pre-publication error review pursuant to EPCA. 10 C.F.R. § 430.5.

9       a.   Air Compressors. Air compressors convert power (e.g., electricity, gas, diesel) into

10  potential energy stored in pressurized air.  Air compressors are used in a variety of applications,

11  such as powering pneumatic tools and providing clean pressurized air for small and large

12  industrial processes.  On November 15, 2016, DOE determined that air compressors met the

13  criteria to be regulated as "covered industrial equipment" under EPCA. 81 Fed Reg. 79,991.

14  There is currently no federal energy standard for air compressors.  DOE posted the new air

15  compressor standard for error review on December 5, 2016, with a response date of January 19,

16  2017. *See* https://energy.gov/sites/prod/files/2016/12/f34/

17  Compressors_Standards_Final_Rule.pdf.

18       b.   Commercial Packaged Boilers.  Commercial packaged boilers are commonly used in

19  heating commercial and multi-family buildings.  Commercial packaged boilers are regulated as

20  covered industrial equipment under EPCA. 42 U.S.C. § 6311(1)(J).  EPCA mandates that DOE

21  review energy efficiency standards every six years and determine either that the standards do not

22  need to be amended (42 U.S.C. § 6313(a)(6)(C)(i)(I)) or issue a notice of proposed rulemaking

23  for revised standards. 42 U.S.C. § 6313(a)(6)(C).  DOE last amended its energy conservation

24  standards for commercial packaged boilers on July 22, 2009. 74 Fed. Reg. 36,312.  DOE posted

25  the new commercial package boiler standard for error review on December 28, 2016 with a

26  response date of February 11, 2017. *See* https://energy.gov/sites/prod/files/2016/12/

27  f34/CPB_ECS_Final_Rule.pdf.

28

c.  <u>Portable Air Conditioners</u>. Portable air conditioners are typically wheeled, floor standing units that cool indoor air in an enclosed space by exhausting the hot condensed air out through a flexible window duct.  On April 18, 2016, DOE determined that portable air conditioners were covered consumer products under EPCA.  81 Fed. Reg. 22,514. Currently, there is no federal energy conservation standard for portable air conditioners.  DOE posted the new portable air conditioners standard for error review on December 28, 2016, with a response date of February 11, 2017. *See* https://energy.gov/sites/prod/files/2016/12/f34/ PAC_ECS_Final_Rule.pdf.

d.  <u>Uninterruptible Power Supplies</u>. Uninterruptible power supplies are a class of battery chargers that provide back-up power supply to batteries in electronic products which are sensitive to power outages and/or fluctuations in electricity supply, such as personal computers. 10 C.F.R. § 430.32.  Presently, there is no energy efficiency standard for uninterruptible power supplies. EPCA requires that DOE issue a final rule establishing energy conservation standards for battery chargers by July 1, 2011.  42 U.S.C. § 6295(u)(1)(E)(i) (II).  DOE posted the new uninterruptible power supply standard for error review on December 28, 2016, with a response date of February 11, 2017.  *See* https://energy.gov/sites/prod/files/ 2016/12/f34/UPS_ECS_Final_Rule.pdf.

e.  <u>Walk-in Coolers and Freezers</u>.  Walk-in coolers and freezers are large, insulated, refrigerated spaces with access doors that are used for temporary storage of refrigerated or frozen food.  EPCA established an initial statutory efficiency standard for walk-in coolers and freezers, 42 U.S.C. § 6313(f)(1)-(3), and directed DOE to publish updated "performance-based standards" for walk-in coolers and freezers that "achieve the maximum improvement in energy that the Secretary determines is technologically feasible and economically justified" by no later than January 1, 2012.  42 U.S.C. § 6313(f)(4)(A).  In June 2014 DOE published a final rule establishing energy efficiency standards for walk-in coolers and freezers, 79 Fed. Reg. 32,050 (June 3, 2014).  However, the standards for six of the nineteen classes of walk-in coolers and freezers from DOE's 2014 rulemaking were vacated by court order. *Lennox Int'l v. DOE*, No. 14-60535 (5th Cir.).  As a result, DOE convened a working group to develop performance standards to replace the invalidated standards. On December 28, 2016, DOE posted for error correction

22

review a final rule establishing consensus standards for the six classes of walk-in coolers and

freezers that lacked updated standards as a result of *Lennox Int'l v. DOE*.  *See*

https://energy.gov/sites/prod/files/2016/12/f34/WICF_ECS_Final_Rule_0.pdf.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Violation of EPCA, 42 U.S.C. § 6305, § 6313, 42 U.S.C. §§ 6291 et seq.)
(DOE has Failed to Publish the New Standards in the Federal Register in Violation of EPCA's
Error Correction Rule, 10 C.F.R. §§ 430.5 et seq.)

70.  Plaintiffs incorporate by reference all the preceding paragraphs.

71.  DOE posted the new air compressor standards for error review on its publicly

accessible website on December 5, 2016. 10 C.F.R. § 430.5(c)(1).

72.  DOE posted the new commercial packaged boilers, portable air conditioners,

uninterruptible power supplies, and walk-in coolers and freezers standards for error review on its

publicly accessible website on December 28, 2016. 10 C.F.R. § 430.5(c)(1).

73.  During the 45-day review period, DOE received no requests for correction related to

the air compressors, portable air conditioners, uninterruptible power supplies, and walk-in coolers

and freezers standards. 10 C.F.R. § 430.5(c)(3).

74.  While DOE did receive several requests for correction on the new standard for

commercial packaged boilers, those requests did not identify typographic, numbering, or

calculation mistakes meant to be addressed by the Error Correction Rule. 10 C.F.R. §

430.5(d)(2)(i); 10 C.F.R. § 430.5(d)(3); 10 C.F.R. § 430.5(b).

75.  The 45-day error review period for the New Standards expired on January 20, 2017

(air compressors) and February 11, 2017 (commercial packaged boilers, portable air conditioners,

uninterruptible power supplies, and walk-in coolers and freezers). 10 C.F.R. § 430.5(c)(1).

76.  The subsequent 30-day error correction period for the New Standards expired on

February 19, 2017 (air compressors) and March 13, 2017 (commercial packaged boilers, portable

air conditioners, uninterruptible power supplies, and walk-in coolers and freezers). 10 C.F.R. §

430.5(d)(1).

77.   DOE has failed to take any of the following non-discretionary actions in violation of EPCA, 10 C.F.R. § 430.5(f), related to the New Standards:

    a.   If the Secretary has received properly filed requests but determines not to make any corrections, the Secretary must submit the rule for publication as it was originally posted. 10 C.F.R. § 430.5(f)(1).

    b.   If the Secretary receives no properly submitted requests and no errors are identified by the Secretary, the Secretary must submit the rule to OFR for publication as it was originally posted "in due course." 10 C.F.R. 430.5(f)(2).

    c.   If the Secretary receives a properly filed request and determines a correction is necessary, the Secretary will submit a corrected rule to OFR publication within 30 days of the expiration of the 45-day period, absent "extenuating circumstances." 10 C.F.R. § 430.5(f)(3).

78.   Regardless of the outcome of the error correction process, DOE was required to send the New Standards either as posted or as corrected to the OFR for publication. 10 C.F.R. § 430.5(f)(1)-(2).

79.   Therefore, even under the scenario giving DOE the most time to submit the New Standards for publication, DOE was required to submit the new standard for air compressors to the OFR by February 21, 2017.

80.   Similarly, DOE was required to submit the new standards for commercial packaged boilers, walk-in coolers and freezers, portable air conditioners, and uninterruptible power supplies to the OFR by March 15, 2017.

81.   DOE has not submitted the New Standards to OFR for publication. As a result, the New Standards are not effective.

82.   DOE's failure to submit the New Standards to the OFR for publication violates 10 C.F.R. § 430.5(f) and therefore constitutes a failure to perform a non-discretionary duty under EPCA, 42 U.S.C. § 6305(a)(2).

**SECOND CLAIM FOR RELIEF**

(Violation of EPCA, 42 U.S.C. § 6305(a)(3))

24

(DOE has Failed to Meet EPCA's Statutory Deadlines for Walk-in Coolers and Freezers and Uninterruptible Power Supplies)

83.  Plaintiffs incorporate by reference all the preceding paragraphs.

84.  EPCA required DOE to publish updated energy efficiency standards for walk-in coolers and freezers that "achieve the maximum improvement in energy that the Secretary determines is technologically feasible and economically justified" by no later than January 1, 2012. *Id.* § 6313(f)(4)(A).

85.  EPCA required DOE to publish updated energy efficiency standards for uninterruptible power supplies that "achieve the maximum improvement in energy that the Secretary determines is technologically feasible and economically justified" by no later than July 1, 2011. *Id.* § 6295(u)(1)(E).

86.  DOE published a final rule in June 2016 establishing energy conservation standards for several classes of battery chargers.  It did not, however, include in that rulemaking energy efficiency standards for battery chargers such as uninterruptible power supplies. Nor did DOE determine that no standard was technically feasible and economically justified. 81 Fed. Reg. 38,266 (June 13, 2016).

87.  DOE has failed to publish energy efficiency standards for walk-in coolers and freezers or for uninterruptible power supplies as required by EPCA.

88.  DOE has violated the statutory deadline for publication of the final rule for walk-in coolers and freezers required in 42 U.S.C. § 6313(f)(4)(A). DOE has thereby failed "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in section 6295." *Id.* §§ 6305(a)(3); 6316(a) (making § 6305(a)(3) applicable to the schedule set forth in § 6313(f)(4)(A)).

89.  DOE has violated the statutory deadline for publication of the final rule for uninterruptible power supplies, required in 42 U.S.C. § 6295(u)(1)(E)(i)(II). DOE has thereby failed "to comply with a nondiscretionary duty to issue a . . . final rule according to the schedules set forth in section 6295." *Id.* § 6305(a)(3).

**THIRD CLAIM FOR RELIEF**

25

(Administrative Procedure Act, 5 U.S.C. § 552(a)(1)(D))
(DOE has Failed to Perform a Non-Discretionary Duty to
Timely Publish the New Standards in the Federal Register)

90.    Plaintiffs incorporate by reference all the preceding paragraphs.

91.    On December 5, 2016, DOE's Acting Assistant Secretary for Energy Efficiency signed and dated the New Energy Conservation Standards for Air Compressors, Docket No. EERE-2013-BT-STD-0040 (posted Dec. 5, 2016).

92.    On December 28, 2016, DOE's Acting Assistant Secretary for Energy Efficiency signed and dated the New Energy Conservation Standards for Portable Air Conditioners, Docket No. EERE-2013-BT-STD-0033 (posted Dec. 28, 2016); Energy Conservation Standards for Uninterruptible Power Supplies, Docket No. EERE-2016-BT-STD-0022 (posted Dec. 28, 2016); Energy Conservation Standards for Walk-in Cooler and Freezer Refrigeration Systems, Docket No. EERE-2015-BT-STD-0016 (posted Dec. 28, 2016); Energy Conservation Standards for Commercial Packaged Boilers, Docket No. EERE-2013-BT-STD-0030 (posted Dec. 28, 2016).

93.    Each New Standard states that the "Secretary of Energy has approved the publication of this final rule."

94.    The APA, 5 U.S.C. § 552(a)(1)(D), provides that "[e]ach agency shall separately state and currently publish in the Federal Register…substantive rules of general applicability adopted as authorized by law."

95.    Having adopted and signed the New Standards as final rules, and the error correction period having run without any action on the part of DOE, the APA, 5 U.S.C. § 552(a)(1)(D), requires that DOE take the discrete step of publishing its New Standards in the Federal Register.

96.    In the alternative, DOE's failure to submit the rules to the OFR for publication violates 5 U.S.C. § 552(a)(1)(D), which states the agency "shall currently" publish rules which have been adopted, and constitutes agency action "unlawfully withheld" and/or "unreasonably delayed" in violation of the APA, 5 U.S.C. § 706(a).  Section 704 of the APA permits review of final agency action "for which there is no other adequate remedy in a court."

97.    Plaintiffs have no adequate remedy at law.

1

**FOURTH CLAIM FOR RELIEF**

2

(Federal Register Act, 44 U.S.C. §1501 et seq.)

3

(DOE has failed to Publish the New Standards in the Federal Register
in violation of the Federal Register Act)

4

5      98.    Plaintiffs incorporate by reference all the preceding paragraphs.

6      99.    The Federal Register Act instructs that documents "required or authorized to be

7   published by section 1505 of this title shall be filed with the Office of the Federal Register." 44

8   U.S.C. § 1503.

9      100.   Section 1505(a) of the Federal Register Act provides that "[t]here shall be published

10   in the Federal Register…documents or classes of documents that may be required to be published

11   by Act of Congress."

12      101.   APA, 5 U.S.C. § 552(a)(1)(D), is an act of Congress requiring that agencies

13   "currently publish in the Federal Register… substantive rules of general applicability adopted as

14   authorized by law."

15      102.   DOE's failure to submit the rule to the OFR for publication violates 44 U.S.C. §

16   1505(a) and constitutes agency action "unlawfully withheld" and/or "unreasonably delayed" in

17   violation of Section 706(a) of the APA.  Section 704 of the APA permits review of final agency

18   action "for which there is no other adequate remedy in a court."

19      103.   Plaintiffs have no adequate remedy at law.

20

**PRAYER FOR RELIEF**

21      WHEREFORE, Plaintiffs respectfully request that this Court:

22      A.    Advance on the docket and expedite the decision of this case under 42 U.S.C. §

23   6305(a) related to DOE's violation of statutory deadlines;

24      B.    Declare, pursuant to 28 U.S.C. § 2201(a), that DOE has failed to submit the New

25   Standards for publication in violation of EPCA, 42 U.S.C. §6295 et seq., § 6313, 10 C.F.R. §

26   430.5(f), or in the alternative, the APA, 5 U.S.C. § 552(a)(1)(D) and the Federal Register Act, 44

27   U.S.C. §1501 et seq.; and that DOE has violated EPCA's deadlines and other requirements with

28   respect to the issuance and amendment of energy efficiency standards for walk-in coolers and

freezers and uninterruptible power supplies;

C.   Enter a mandatory injunction, pursuant to 42 U.S.C. §§ 6305(a), (a)(2), (a)(3), and 6316(a), (b)(1), (e)(1)(A), compelling DOE to send the New Standards to the OFR for immediate publication;

D.   Award to Plaintiffs their costs of litigation including, but not limited to, reasonable attorneys' fees, pursuant to 42 U.S.C. § 6305(d), 28 U.S.C. § 2412, and any other applicable law;

E.   Order such other and further relief as this Court deems just and appropriate.

Dated:  June 13, 2017

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
SUSAN S. FIERING
Supervising Deputy Attorney General


/s/ Jamie Jefferson
JAMIE JEFFERSON
SOMERSET PERRY
Deputy Attorneys General
*Attorneys for the Plaintiff the People of the State of California, by and through Attorney General Xavier Becerra*

Dated:  June 13, 2017

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Plaintiff State of New York


/s/ Timothy Hoffman
TIMOTHY HOFFMAN, *pro hac vice pending*
LISA KWONG, *pro hac vice pending*
Assistant Attorneys General
Office of the Attorney General
Environmental Protection Bureau
The Capitol
Albany, New York 12224
Tel:     (716) 853-8465
(518) 776-2422
Email: Timothy.Hoffman@ag.ny.gov
Lisa.Kwong@ag.ny.gov

28

1

2  Dated:  June 13, 2017

GEORGE JEPSEN
Attorney General of the
3  State of Connecticut
Attorney for Plaintiff State of Connecticut

4

5  /s/ Robert Snook
ROBERT SNOOK, *pro hac vice pending*
6  MATTHEW LEVINE, *pro hac vice pending*
Assistant Attorneys General
7  Office of the Attorney General
55 Elm Street
8  Hartford, Connecticut 06141-0120
Tel:     (860) 808-5250
9  Email: Robert.Snook@ct.gov

10

11  Dated:  June 13, 2017

LISA MADIGAN
Attorney General of the
State of Illinois
12  Attorney for Plaintiff State of Illinois

13

14  /s/ James P. Gignac
JAMES P. GIGNAC *pro hac vice pending*
Assistant Attorney General
15  Illinois Attorney General's Office
69 W. Washington St., 18th Floor
16  Chicago, Illinois 60602
Tel:     (312) 814-0660
17  Email: jgignac@atg.state.il.us

18

19  Dated:  June 13, 2017

JANET T. MILLS
Attorney General of the
State of Maine
20  Attorney for Plaintiff State of Maine

21

22  /s/ Katherine Tierney
KATHERINE TIERNEY *pro hac vice pending*
Assistant Attorney General
23  Office of the Attorney General
State House Station 6
24  Augusta, ME 04333-0006
Tel:     (207) 626-8800
25  Email: katherine.tierney@maine.gov

26

27

28

29

| | | |
|---|---|---|
| 1 | Dated:  June 13, 2017 | MAURA HEALEY<br>Attorney General of the<br>Commonwealth of Massachusetts<br>Attorney for Plaintiff Commonwealth of<br>Massachusetts |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | /s/ I. Andrew Goldberg<br>I. ANDREW GOLDBERG *pro hac vice pending*<br>Assistant Attorney General<br>Office of the Attorney General<br>One Ashburton Place, 18th Floor<br>Boston, Massachusetts 02108<br>Tel: (617) 963-2429<br>Email: andy.goldberg@state.ma.us |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | Dated:  June 13, 2017 | ELLEN F. ROSENBLUM<br>Attorney General of the<br>State of Oregon<br>Attorney for Plaintiff State of Oregon |
| 11 | | |
| 12 | | |
| 13 | | /s/ Jesse Ratcliffe<br>JESSE RATCLIFFE *pro hac vice pending*<br>Office of the Attorney General<br>Oregon Department of Justice<br>1162 Court Street, N.E.<br>Salem, Oregon 97301-4096<br>Tel:  (503) 947-4549<br>Email:  jesse.d.ratcliffe@doj.state.or.us |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | Dated:  June 13, 2017 | JOSH SHAPIRO<br>Attorney General of the<br>Commonwealth of Pennsylvania<br>Attorney for Plaintiff Commonwealth of<br>Pennsylvania |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | /s/ Steven J. Santarsiero<br>STEVEN J. SANTARSIERO *pro hac vice pending*<br>MICHAEL J. FISCHER *pro hac vice pending*<br>Chief Deputy Attorneys General<br>Office of Attorney General<br>16th Floor, Strawberry Square<br>Harrisburg, PA 17120<br>Tel:  (717) 787-3391<br>Email:  ssantarsiero@attorneygeneral.gov<br>mfischer@attorneygeneral.gov |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2    Dated:  June 13, 2017                     THOMAS J. DONOVAN, JR.

3                                      Attorney General
                                      Office of the Attorney General

4                                      Attorney for Plaintiff State of Vermont

5                                      /s/ Laura B. Murphy

6                                    LAURA B. MURPHY *pro hac vice pending*
                                    Assistant Attorney General

7                                    Environmental Protection Division
                                    Vermont Attorney General's Office

8                                    109 State Street
                                    Montpelier, VT  05609

9                                    Tel:   (802) 828-1059
                                    Email: laura.murphy@vermont.gov

10

11   Dated:  June 13, 2017                     BOB FERGUSON

12                                    Attorney General of Washington
                                    Attorney for Plaintiff State of Washington

13                                    /s/ LAURA J. WATSON

14                                    LAURA J. WATSON, *pro hac vice pending*
                                    Senior Assistant Attorney General

15                                    Washington State Office of the Attorney General
                                    P.O. Box 40117

16                                    Olympia, WA 98504-0117
                                    Tel:   (360) 586-6743

17                                    Email: laura.watson@atg.wa.gov

18

19   Dated:  June 13, 2017                     ZACHARY W. CARTER

20                                    Corporation Counsel of the
                                    City of New York

21                                    Attorney for Plaintiff City of New York

22                                    /s/ Susan E. Amron

23                                    SUSAN E. AMRON, Chief, *pro hac vice pending*
                                    Environmental Law Division

24                                    SARAH KOGEL-SMUCKER, Senior Counsel, *pro hac vice pending*
                                    New York City Law Department

25                                    100 Church Street, Room 6-146
                                    New York, New York 10007

26                                    Tel:   (212) 356-2070
                                    (212) 356-2315

27                                    Email: samron@law.nyc.gov
                                    skogel@law.nyc.gov

28

1

2

3    Dated:  June 13, 2017                          BRIAN E. FROSH
                                                    Attorney General of the
4                                                   State of Maryland

5                                                   /s/ Steven M. Sullivan
                                                    STEVEN M. SULLIVAN, *pro hac vice pending*
6                                                   Solicitor General
                                                    Office of the Attorney General
7                                                   200 Saint Paul Place, 20th Floor
                                                    Baltimore, Maryland 21202
8                                                   Tel:     (410) 576-6427
                                                    Email: ssullivan@oag.state.md.us
9

10

11

12   OK2017304088

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28